1  TORGER OAAS
2  ATTORNEY AT LAW
3  618 West Main; Suite 201
   Post Office Box 76
4  Lewistown, Montana 59457
5  (406) 538-2338
   oaaslaw@midrivers.com
6  Attorney for Plaintiff

7
   WILLIAM E. BERGER
8  WILKINS & BERGER
9  PO Box 506
   Lewistown, MT 59457
10 (406) 538-9272
11 Attorney for Plaintiff

12
13       MONTANA SECOND JUDICIAL DISTRICT COURT,
                   SILVER BOW COUNTY
14
15 GINA JAEGER, individually, AND AS       Cause No. DV. 16-156
   PERSONAL REPRESENTATIVE OF THE
16 ESTATE OF HER SISTER CHARLENE
   HILL,
17                                            COMPLAINT /
18            Plaintiff,                      DEMAND FOR
                                             JURY TRIAL
19        vs.

20 GENESIS HEALTHCARE, INC.,
   d/b/a THE BUTTE CENTER,
21 JOHN DOE LLC's 1-10;
   JOHN DOE, INC., 1-10
22
23            Defendants.

24
25 **Plaintiff alleges:**

26    1.  Charlene Hill (Charlene) was accepted and admitted to a skilled



Complaint / Jury Demand
Page 1 of 7

nursing facility located in Butte, MT.  The skilled nursing facility is known as the "Butte Center" and is licensed by the Montana Department of Health & Human Services under that name, license # 13066.

2. The Butte Center is owned and operated under the control of Defendant Genesis Healthcare, Inc., a corporation organized under the laws of the State of Delaware.

3. Genesis Healthcare, Inc. describes itself as one of the largest skilled nursing care providers with more than 400 skilled nursing centers and senior living residences in 28 states nationwide.  Genesis also supplies rehabilitation services to nearly 1,500 healthcare providers in 46 states and the District of Columbia.

4. Charlene was admitted to the Butte Center on 8/13/2015.  On 8/25/2015, Charlene was transported by ambulance to St. James Hospital in Butte, MT where the following conditions were diagnosed:

    a. Pneumonia
    b. Two infected pressure sores
    c. Cellulitis
    d. Yeast infection
    e. Dehydration
    f. Sepsis
    g. Septic shock

TORGER S. OAAS
ATTORNEY AT LAW
POST OFFICE BOX 78
EWISTOWN, MONT. 59457
TELEPHONE 406 53R-2338

Complaint / Jury Demand
Page 2 of 7

She did not have any of these health conditions when she was admitted to the Butte Center on 8/13/2015.

5. On 8/25/2015, shortly after her admission to St. James Hospital, Charlene suffered a cardiac event from which she never regained consciousness. Charlene remained on life support until September 2nd, 2015 at which time life support was withdrawn and Charlene died.

6. Defendant was negligent in the care provided to Charlene, including but not limited to:

  a. Violations of CFR § 483.25 which states:

   > "Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care."

  b. Violations of CFR § 483.25(c) which states:

   > "Based on the comprehensive assessment of a resident, the facility must ensure that (1) A resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable; and (2) A resident having pressure sores receives necessary treatment and services to promote healing, prevent infection and prevent new sores from developing."

  c. Violations of CFR § 483.25(j) which states:

TORGER S. OAAS
ATTORNEY AT LAW
POST OFFICE BOX 76
LEWISTOWN, MONT. 59457
TELEPHONE 406 538-2338

Complaint / Jury Demand
Page 3 of 7

"The facility must provide each resident with sufficient fluid intake to maintain proper hydration and health."

d. Violations of CFR § 483.30 which states:

"The facility must have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care."

e. Violations of CFR § 483.65 which states:

"The facility must establish and maintain an infection control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of disease and infection."

f. Violations of CFR § 483.75 which states:

"A facility must be administered in a manner that enables it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident."

g. Breach of the general standard of care for Charlene Hill

h. Failure to have proper equipment and trained personnel

   to care for a morbidly obese resident

i. Violations of CFR § 483.20 which states:

"The facility must conduct initially and periodically a comprehensive, accurate, standardized,

TORGER S. OAAS
ATTORNEY AT LAW
POST OFFICE BOX 76
LEWISTOWN, MONT. 59467
TELEPHONE 406 638-2939

Complaint / Jury Demand
Page **4** of **7**

reproducible   assessment   of   each   resident's functional capacity"

7. Charlene's remains were autopsied by Jaime L. Oeberst, M.D., Montana's Chief Medical Examiner.  Dr. Oeberst concluded that the cause of Charlene's death was septic shock.

## Count 1:  Direct Corporate Liability

Defendant Genesis Healthcare, Inc. exerts sufficient control over the operations of the Butte Center to make it legally responsible for the personal injuries and wrongful death of Charlene Hill.

## Count 2:  Vicarious Corporate Liability

Genesis Healthcare, Inc. is responsible for the negligence of the Butte Center employees as set out above on the basis of respondent superior.

## Count 3:  Liability of the Butte Center

The "Butte Center" is also liable for the negligence of its employees as set out above which caused the personal injuries and wrongful death of Charlene Hill.

TORGER S. OAAS
ATTORNEY AT LAW
POST OFFICE BOX 78
LEWISTOWN, MONT. 59457
TELEPHONE 406 538-2339

**Count 4:**

The conduct of the Butte Center and Genesis Healthcare, Inc. as described herein is willful and wanton and Defendant is liable for their willful and wanton conduct.

**Count 5:  Constructive Fraud**

Defendants owed a general duty of care to Charlene Hill.  Defendants also owed specific duties of care as set forth in the federal regulations set forth verbatim in this complaint.  Defendants told Charlene Hill in writing that they would provide quality clinical care and be dedicated to meeting and exceeding the needs of its patients.  In the case of Charlene Hill, these statements were false and Defendant's false representations caused Plaintiff to suffer damage and death as set forth herein.

**Count 6:  Liability for Punitive Damages**

Plaintiff asserts a punitive damage claim against defendant based upon the standards set forth in 27-1-221, MCA.

TORGER S. OAAS
ATTORNEY AT LAW
POST OFFICE BOX 78
LEWISTOWN, MONT. 59457
TELEPHONE 406 538-2328

Complaint / Jury Demand
Page 6 of 7

## Relief Requested

1.    Compensation for all damages allowed under Montana law for

wrongful death and survivorship claims;

2.    For punitive damages as determined by the jury;

3.    For Plaintiff's costs of suit;

4.    For such other relief as the Court deems proper.

DATED this _____ day of April, 2016.


_____
TORGER OAAS
Attorney at Law


_____
WILLIAM E. BERGER
Attorney at Law

TORGER S. OAAS
ATTORNEY AT LAW
POST OFFICE BOX 76
LEWISTOWN, MONT. 59457
TELEPHONE 406 538-2338

Complaint / Jury Demand
Page 7 of 7

TORGER OAAS
ATTORNEY AT LAW
618 West Main; Suite 201
Post Office Box 76
Lewistown, Montana 59457
(406) 538-2338
oaaslaw@midrivers.com
Attorney for Plaintiff

WILLIAM E. BERGER
WILKINS & BERGER
PO Box 506
Lewistown, MT 59457
(406) 538-9272
Attorney for Plaintiff

## MONTANA SECOND JUDICIAL DISTRICT COURT,
## SILVER BOW COUNTY

| | |
|---|---|
| GINA JAEGER, individually, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF HER SISTER CHARLENE HILL,<br><br>Plaintiff,<br><br>vs.<br><br>GENESIS HEALTHCARE, INC., d/b/a THE BUTTE CENTER, JOHN DOE LLC's 1-10; JOHN DOE, INC., 1-10<br><br>Defendants. | Cause No. DV-16-156<br><br>**SUMMONS** |

**TO:   GENESIS HEALTHCARE, INC., d/b/a THE BUTTE CENTER, JOHN DOE LLC's 1-10; JOHN DOE, INC., 1-10**

   <u>**A lawsuit has been filed against you.**</u>

Within 21 days after service of this Summons on you (not counting the day you received it) you must serve on the Plaintiff an answer to the attached Complaint or a motion under Rule 12 of the Montana Rules of Civil Procedure.  Do not include the day you were served in your calculation of time.  The answer or motion must be served on the Plaintiff or Plaintiff's attorney, if Plaintiff is represented by an attorney, whose name and address is:

TORGER OAAS
Attorney at Law
P.O. Box 76
Lewistown, MT  59457
        Telephone: (406) 538-2338

If you fail to respond, judgment by default will be entered against you for the relief demanded in the Complaint.

You also must file your answer or motion with the Court.

Dated this __25th__ day of April, 2016.

(Seal)

CLERK OF THE DISTRICT COURT

LORI MALONEY



By: __T. Holm_____

Kiely Keane
Brett P. Clark
CROWLEY FLECK PLLP
900 N. Last Chance Gulch, Suite 200
P.O. Box 797
Helena, MT 59624-0797
Telephone: (406) 449-4165
kkeane@crowleyfleck.com
bclark@crowleyfleck.com

Charles K. Smith
CROWLEY FLECK PLLP
Thornton Building
65 East Broadway, Suite 400
Butte, MT 59701
406-457-2057
cksmith@crowleyfleck.com

Attorneys for Peak Medical Montana Operations, LLC, d/b/a Butte Center

FILED

JUN 02 2016

___ Maloney, Clerk
By:_____
Deputy Clerk

MONTANA SECOND JUDICIAL DISTRICT COURT, SILVER BOW COUNTY

| | | |
|---|---|---|
| GINA JAEGER, individually, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF HER SISTER CHARLENE HILL, | ) ) ) | Cause No. DV-16-156 |
| Plaintiffs, | ) ) | PEAK MEDICAL MONTANA |
| vs. | ) ) ) | OPERATIONS, LLC, D/B/A BUTTE CENTER'S ANSWER TO PLAINTIFFS' COMPLAINT/DEMAND |
| GENESIS HEALTHCARE, INC., d/b/a THE BUTTE CENTER, JOHN DOE LLC's 1-10; JOHN DOE, INC., 1-10 | ) ) ) ) | FOR JURY TRIAL |
| Defendants. | ) ) | |

//

//

//



Defendant Peak Medical Montana Operations, LLC, d/b/a Butte Center ("PMMO"),
improperly identified in the caption as "Genesis Healthcare, Inc., d/b/a The Butte Center,"
hereby Answers Plaintiffs' Complaint/Demand for Jury Trial as follows:[1]

1.    Denies each and every allegation contained in the Complaint except as expressly
admitted herein.

2.    Admits the allegations contained in ¶ 1.

3.    Admits that Genesis Healthcare, Inc., is a corporation organized under the laws of
the State of Delaware and denies the remaining allegations contained in ¶ 2.

4.    The allegations in ¶ 3 are not directed to PMMO and, therefore, no response is
required. To the extent a response is required, PMMO lacks sufficient knowledge or information
as to the truth of the allegations and therefore denies the allegations contained in ¶ 3.

5.    Admits Ms. Hill was admitted to the Butte Center on August 13, 2015 and that
she was transported by ambulance to St. James Hospital on August 25, 2015. PMMO denies the
remaining allegations in ¶ 4, including the characterization of her diagnosis.

6.    Admits Ms. Hill was admitted to St. James Hospital on August 25, 2015, had an
event, and passed away on September 2, 2015. PMMO denies the remaining allegations
contained in ¶ 5.

7.    Denies ¶ 6 and all its subparts. PMMO further denies that the care provided to
Ms. Hill was negligent. PMMO denies any violation of any of the sections of the Code of
Federal Regulations ("CFR") identified in ¶ 6 and affirmatively states that CFR sections speak

---

[1] Plaintiffs improperly conflate the "Butte Center" and a completely separate entity, Genesis Healthcare, Inc. "Butte
Center" is registered with the Montana Secretary of State as an assumed name for Peak Medical Montana
Operations, LLC ("PMMO"). Genesis Healthcare, Inc. ("Genesis") is not the same entity as PMMO, Genesis does
not operate as the "Butte Center" and did not provide the care at issue. Genesis is a Delaware corporation, its
principal place of business is in California, and it does not conduct business in Montana. PMMO submits this
Answer given the "Butte Center" is identified as the d/b/a in the caption. Upon information and belief, Genesis was
not served in this matter.

for themselves. PMMO further denies any breach of the standard of care and any failure to have proper equipment or trained personnel to care for a morbidly obese resident. PMMO denies any remaining allegations contained ¶ 6.

8.      Admits Ms. Hill's remains were autopsied by Jaime Oeberst, M.D. PMMO denies the remaining allegations contained in ¶ 7.

## COUNT I

9.      Denies the allegations contained in Count 1.

## COUNT II

10.     Denies the allegations contained in Count 2.

## COUNT III

11.     Denies the allegations contained in Count 3.

## COUNT IV

12.     Denies the allegations contained in Count 4.

## COUNT V

13.     Denies the allegations contained in Count 5.

## COUNT VI

14.     Denies the allegations contained in Count 6.

## AFFIRMATIVE DEFENSES

1.      Plaintiffs fail to state a claim upon which relief can be granted.

2.      Plaintiffs' alleged damages are the result of acts or omissions of third parties over which PMMO has no control.

3.      Plaintiffs' damages, if any, were caused by Ms. Hill's own conduct.

4. Plaintiffs' alleged damages are the result of superseding and intervening causes wholly unrelated to any alleged act, error or omission on the part of PMMO.

5. Any recovery by Plaintiffs should be reduced by amounts paid or payable from a collateral source pursuant to Montana Code Annotated § 27-1-308.

6. Any recovery by Plaintiffs for non-economic damages is limited as set forth in Montana Code Annotated § 25-9-411.

7. Any recovery by Plaintiffs should be made as periodic payments as set forth in Montana Code Annotated § 25-9-412.

8. PMMO complied with all applicable standards of health care and was not negligent as alleged in the Complaint.

9. Any negligence on the part of PMMO, which negligence is expressly denied, was not a substantial contributing factor or proximate cause of the injuries and/or damages alleged in the Complaint.

10. The comparative negligence of Ms. Hill equaled or exceeded that of PMMO, if any, and was a proximate cause of Plaintiffs' and/or Ms. Hill's alleged injuries, which either bars or diminishes Plaintiffs' recovery.

11. PMMO has the right of contribution from any other person, including persons or entities who have settled with or who have been released by Plaintiffs, whose negligence may have contributed as a proximate cause to the injury claimed by Plaintiffs should Plaintiffs recover against PMMO as provided by Montana Code Annotated § 27-1-703.

12. PMMO complied with all applicable statutes, rules and regulations.

13. Plaintiff Gina Jaeger has failed to state any claim on her own behalf individually.

14.     Plaintiffs' claims are subject to a voluntary agreement by Ms. Hill to submit to binding arbitration and is binding on any successors, therefore, the Court lacks jurisdiction over the subject matter.

15.     Plaintiffs' claims are subject to a voluntary agreement by Ms. Hill to submit to binding arbitration and subject to the terms of that Agreement.

16.     Ms. Hill waived the right to bring an action in Court.

17.     "Butte Center" is not an assumed name of Genesis Healthcare, Inc.

18.     Genesis Healthcare, Inc. is misidentified in the caption.

19.     Under the circumstances and in accordance with the Rules of Civil Procedure, the caption should be amended to correctly reflect the name of the Defendant as "Peak Medical Montana Operations, LLC, d/b/a Butte Center."

20.     Plaintiffs have failed to properly identify Peak Medical Montana Operations, LLC.

21.     Plaintiffs have failed to plead the elements of constructive fraud with particularity.

22.     Plaintiffs have failed to set forth the circumstances allegedly constituting fraud.

23.     Plaintiffs fail to state facts sufficient to constitute a cause of action for punitive or exemplary damages.

24.     Plaintiffs' Complaint, to the extent it seeks exemplary or punitive damages, violates PMMO's due process rights under the 14th Amendment under the U.S. Constitution and the Constitution for the State of Montana because of lack of sufficient standards governing such damage awards.

25. Plaintiffs' Complaint, to the extent it seeks exemplary or punitive damages, violates PMMO's rights to protection from "excessive fines" as provided in the 8th Amendment to the U.S. Constitution and Art. II, Section XXII of the Constitution for the State of Montana, and violates PMMO's rights to substantive due processes provided in the 5th and 14th Amendments of the U.S. Constitution and the Constitution for the State of Montana, and, therefore, fails to state a cause of action supporting such damages.

26. PMMO alleges that to permit recovery in respect to the matters herein alleged would violate the provisions of the U.S. Constitution, Art. I, Section X.

27. PMMO alleges that to permit recovery in respect to the matters herein alleged would violate the provisions of the U.S. Constitution, Amendments V, VII, VIII and XIV.

28. Butte Center is not an alter ego of Genesis Healthcare, Inc.

## APPLICABILITY OF AFFIRMATIVE DEFENSES

PMMO is not certain which affirmative defenses may apply at the time of trial and reserves the right to add additional affirmative defenses throughout the course of discovery in this case. PMMO will dismiss any affirmative defense at the final pre-trial conference that does not appear to be reasonably supported by the facts and/or law.

WHEREFORE, PMMO requests the Court grant the following relief:

1. Dismiss Plaintiffs' claims with prejudice;

2. Order judgment in PMMO's favor;

3. Award PMMO its reasonable attorney's fees and costs; and

4. Any other such relief as the Court deems just and proper.

Dated this 2nd day of June, 2016.

CROWLEY FLECK PLLP

By _____
Charles K. Smith
Attorneys for Peak Medical Montana Operations, Inc.,
d/b/a Butte Center

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of June, 2016, I served a true and correct copy of the foregoing document, by the means designated below, to the following:

[X] U.S. Mail
[ ] FedEx
[ ] Hand-Delivery
[ ] Facsimile
[ ] Email

Torger Oaas
Attorney at Law
P.O. Box 76
618 West Main, Suite 201
Lewistown, MT 59457

[X] U.S. Mail
[ ] FedEx
[ ] Hand-Delivery
[ ] Facsimile
[ ] Email

William E. Berger
Wilkins & Berger
P.O. Box 506
Lewistown, MT 59457

CROWLEY FLECK PLLP

Kiely Keane
Brett P. Clark
CROWLEY FLECK PLLP
900 N. Last Chance Gulch, Suite 200
P.O. Box 797
Helena, MT 59624-0797
Telephone: (406) 449-4165
kkeane@crowleyfleck.com
bclark@crowleyfleck.com

Charles K. Smith
CROWLEY FLECK PLLP
Thornton Building
65 East Broadway, Suite 400
Butte, MT 59701
406-457-2057
cksmith@crowleyfleck.com

FILED

JUN 02 2016

By: Lori Maloney, Clerk
Deputy Clerk

Attorneys for Peak Medical Montana Operations, LLC, d/b/a Butte Center

## MONTANA SECOND JUDICIAL DISTRICT COURT, SILVER BOW COUNTY

| | | |
|---|---|---|
| GINA JAEGER, individually, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF HER SISTER CHARLENE HILL, | ) ) ) | Cause No. DV-16-156 |
| Plaintiff, | ) ) ) | **MOTION FOR SUBSTITUTION OF JUDGE** |
| vs. | ) ) | |
| GENESIS HEALTHCARE, INC., d/b/a THE BUTTE CENTER, JOHN DOE LLC's 1-10; JOHN DOE, INC., 1-10; | ) ) ) ) | |
| Defendants. | ) ) | |

The undersigned hereby moves for substitution of District Judge Kurt Krueger in this

case.



**EXHIBIT**

C



COPY

DATED this 2nd day of June, 2016.

CROWLEY FLECK PLLP

By _____
      Charles K. Smith
Attorneys for Peak Medical Montana Operations, LLC,
d/b/a Butte Center

## CERTIFICATE OF SERVICE

    I hereby certify that on the 2nd day of June, 2016, I served a true and correct copy of the foregoing document, by the means designated below, to the following:

[X] U.S. Mail            Torger Oaas
[ ] FedEx               Attorney at Law
[ ] Hand-Delivery     P.O. Box 76
[ ] Facsimile          618 West Main, Suite 201
[ ] Email               Lewistown, MT 59457

[X] U.S. Mail            William E. Berger
[ ] FedEx               Wilkins & Berger
[ ] Hand-Delivery     P.O. Box 506
[ ] Facsimile          Lewistown, MT 59457
[ ] Email

CROWLEY FLECK PLLP

MONTANA SECOND JUDICIAL DISTRICT COURT, SILVER BOW COUNTY

GINA JAEGER, individually, AND AS ) Cause No. DV-16-156
PERSONAL REPRESENTATIVE OF THE )
ESTATE OF HER SISTER CHARLENE HILL,)
                                   )
            Plaintiff,             )     **ORDER GRANTING**
                                   )     **MOTION FOR SUBSTITUTION OF**
    vs.                            )     **JUDGE**
                                   )
                                   )
GENESIS HEALTHCARE, INC., d/b/a THE )
BUTTE CENTER, JOHN DOE LLC's 1-10; )
JOHN DOE, INC., 1-10               )
                                   )
            Defendants.            )

---

Upon consideration of the Motion of Defendant Peak Medical Montana Operations, LLC,

d/b/a Butte Center ("PMMO") and Genesis Healthcare, Inc.'s Motion for Substitution of Judge,

IT IS HEREBY ORDERED that the Honorable _____ will sit in

the above-entitled matter in the place of Honorable Kurt Krueger.

The Clerk is directed to provide a copy hereof to all counsel of record.

DATED this _____ day of _____, 2016.


By: _____
                Kurt Krueger


cc:    Kiely Keane
       Brett P. Clark
       Charles K. Smith
       Torger Oaas
       William E. Berger

5/25/2016                                                  Division of Corporations - Filing

Delaware.gov | Text Only                                  Governor | General Assembly | Courts | Elected Officials | State Agencies

*State of*
*Delaware*
The Official Website of the First State

Department of State: Division of Corporations

Allowable Characters

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
GetCorporate Status
Submitting a Request
How to Form a New Business Entity
Certifications, Apostilles & Authentication of
Documents

Frequently Asked Questions   View Search Results

## Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| File Number: | 2893598 | Incorporation Date / Formation Date: | 5/7/1998 (mm/dd/yyyy) |

| Entity Name: | PEAK MEDICAL MONTANA OPERATIONS, LLC |

| Entity Kind: | Limited Liability Company | Entity Type: | General |

| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | CORPORATION SERVICE COMPANY |

| Address: | 2711 CENTERVILLE RD SUITE 400 |

| City: | WILMINGTON | County: | New Castle |

| State: | DE | Postal Code: | 19808 |

| Phone: | 302-636-5401 |

Additional information is available for a fee. You can retrieve Status for a fee of $10.00 or
more detailed information including current franchise tax assessment, current filing history
and more for a fee of $20.00.

Would you like ⚪ Status  ⚪ Status, Tax & History Information   [ Submit ]

[ Back to Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov



EXHIBIT
D

## LIMITED LIABILITY COMPANY OPERATING AGREEMENT
## OF
## PEAK MEDICAL MONTANA OPERATIONS, LLC

This Limited Liability Company Operating Agreement (this "Operating Agreement") of Peak Medical Montana Operations, LLC, a Delaware limited liability company (the "Company"), is effective as of February 2, 2015, by Peak Medical, LLC, as the sole member of the Company (together with any other Person who hereafter becomes an additional or substitute Member, together with their successors and permitted assigns, the "Member").

### WITNESSETH:

WHEREAS, the Member wishes to enter into this Operating Agreement to set forth its rights, obligations and duties with respect to the Company; and

WHEREAS, capitalized terms used but not defined in this Operating Agreement shall have the meaning set forth on **Schedule C** hereto, which schedule is hereby incorporated into and made part of this Operating Agreement by this reference.

NOW, THEREFORE, in accordance with the Delaware Limited Liability Company Act, as amended from time to time (the "Act"), the Member hereby agrees as follows:

1.    Name. The name of the limited liability company is:

### Peak Medical Montana Operations, LLC

2.    Term. The Company shall have perpetual existence, unless the Company is dissolved and its business and affairs wound up in accordance with the provisions of this Operating Agreement or the Act.

3.    Purpose. The nature of the business and purpose of the Company shall be to engage solely in the following activities (the "Company's Business"):

i.    To carry on any lawful business, purpose or activity relating to the leasing, management and operation of the skilled nursing and/or assisted living healthcare facility located at the location identified on **Schedule A** attached hereto (each a "Facility") pursuant to the license(s) issued to the Company by the applicable governmental authorities; and

ii.   To engage in any other lawful act permitted by the Act and approved by the Member.

4.    Principal Business Office. The principal business office of the Company shall be located at 101 E. State Street, Kennett Square, Pennsylvania 19348, or such other location as may hereafter be determined by the Member.

5.    Intentionally Omitted.


EXHIBIT
E

6.      Registered Agent. The name and address of the registered agent of the Company in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE, 19808. The Member may change the registered agent in its discretion.

7.      Certificates.

(a)      Articles. The Company was formed as a Delaware limited liability company under the Act. The Member shall execute, deliver and file any other certificates and other filings (and any amendments and/or restatements thereof) necessary or desirable for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

(b)      Certificate of Cancellation. The Company shall continue in existence as a separate legal entity until dissolved and a Certificate of Cancellation is filed in accordance with Section 20 below.

8.      Member. The Member is the sole member of the Company and, unless and until any additional member(s) are admitted in accordance with the provisions of this Operating Agreement and the Act, the Member shall receive all of the limited liability company interests of the Company. The name and business address of the Member is set forth in **Schedule B.**

9.      Management.

(a)      Management of the Company Generally. (i) The Company's Business shall be managed by or under the direction of the Member, and (ii) the Member shall have full and complete authority, power and discretion to direct, manage and control the business, affairs and properties of the Company, to make and/or delegate as the Member may elect all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's Business. To the extent of the powers, statutory or otherwise, held by the Member under the Act or set forth in this Operating Agreement, the Member is the agent of the Company for the purpose of the Company's Business, and the actions of the Member taken in accordance with such powers shall bind the Company. In the event of any inconsistency between any terms and conditions contained in this Operating Agreement and any non-mandatory provisions of the Act, the terms and conditions contained in this Operating Agreement shall govern, and in the event of any inconsistency between any items and conditions contained in this Operating Agreement and any mandatory provisions of the Act, the terms and conditions of the Act shall govern.

(b)      Authority to Bind the Company. Unless authorized to do so by this Operating Agreement or by the Member, no attorney-in-fact, employee, officer or agent of the Company other than the Member shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable pecuniarily for any purpose.

(c)      Delegation. The Member may delegate at any time and from time to time its authority, power and discretion hereunder and/or under the Act (or any portion thereof) to one or more officers of the Company or such other Person designated by the Member. The Member is responsible for supervising the officers or other representatives of the Company.

(d)      Manner of Acting. Whenever any Company action is to be taken by a vote of the Member, it shall be authorized upon receiving the affirmative vote of the Member. Any action of the Company which may be taken at a meeting of the Member may be taken without a meeting by written consent upon the execution of such consent by the Member.

(e)     Authority and Certain Powers of the Member. Without limiting the generality of Section 9(a) above, the Member shall have power and authority, on behalf of the Company:

(i)     Acts. To do and perform all acts as may be necessary or appropriate to the conduct of the Company's Business;

(ii)    Property. To purchase, hold, sell, exchange, transfer and otherwise acquire and dispose of and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to real and personal property, whether tangible or intangible, held by the Company;

(iii)   Insurance. To purchase liability and other insurance to protect the Company's property and the Company's Business;

(iv)    Loans. To borrow money and to execute and deliver documents and instruments authorizing the confession of judgment against the Company;

(v)     Officers. To appoint from time to time such officers, committees, employees or other agents as the Company's Business may require, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in this Operating Agreement, or as the Member may from time to time determine. The Member may delegate to any committee the power to elect subordinate officers and to retain or appoint employees or other agents, or committees thereof, and to prescribe the authority and duties of such subordinate officers, committees, employees or other agents. The salaries or other compensation of any other officers, employees and other agents shall be fixed from time to time by the Member or the committee to which the power to elect such officers or to retain or appoint such employees or other agents has been delegated pursuant to this Section 9;

(vi)    Documents. To execute, and to authorize Persons to execute, on behalf of the Company all instruments and documents, including, without limitation, checks, drafts, notes and other negotiable instruments, mortgages or deeds of trust, security agreements, financing statements, guaranties, documents providing for the acquisition, mortgage or disposition of the Company's property, assignments, deeds, bills of sale, leases, partnership agreements, operating agreements of other limited liability companies, including without limitation, of any Affiliate, and any other instruments or documents necessary or advisable, in the opinion of the Member, to the Company's Business;

(vii)   Experts. To employ or otherwise engage, employees, accountants, legal counsel, managing agents, or other experts or consultants to perform services for the Company and to compensate them from Company funds; and

(viii)  Other Agreements. To authorize the entering into of any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Member may approve.

(f)     Reliance by Third Parties. Persons dealing with the Company are entitled to rely conclusively upon a certificate of the Member to the effect that it is then acting on behalf of the Company and upon the power of the Member as herein set forth. Persons dealing with the Company shall be entitled to rely on a certificate of any officer of the Company as conclusive evidence of the incumbency of any officer of the Company and its authority to take action on behalf of the Company and shall be entitled to rely on a copy of any resolution or other action taken by the Member, certified by any officer of the Company, as conclusive

evidence of such action and of the authority of the officer referred to in such resolution or other action to bind the Company to the extent set forth therein.

(g) Limited Liability.

(i) Management. The Member shall perform its managerial duties in good faith, in a manner reasonably believed to be in the best interests of the Company, and with such care and business judgment as an ordinarily prudent person in a like position would use under similar circumstances. The Member shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any of its officers, employees or committees of the Company, or by any other person, as to matters the Member reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits or losses of the Company or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be made.

(ii) No Personal Liability. Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member of the Company.

(iii) Duty of Member. The Member, acting in its capacity as the sole member of the Company, shall not be liable to the Company for money damages for breach of fiduciary duty except to the extent the Member could be held liable under the Delaware General Corporation Law if the Company were a Delaware corporation and the Member were a director.

(h) Bank Accounts. The Member may from time to time open bank accounts in the name of the Company, and any officer of the Company designated by the Member, as may be determined from time to time by the Member, shall be the sole signatory or signatories thereon, unless the Member determines otherwise.

(i) Compensation. The Company shall reimburse the Member for its reasonable expenses incurred in connection with its services to the Company.

10. Officers.

(a) Generally.

(i) Number, Qualifications and Designation. The Member may elect a president, one or more vice presidents, a secretary and such other officers of the Company as may be elected in accordance with the provisions of Section 10(b). The Member may elect a chairman, who also shall be an officer of the Company. Officers shall be natural persons of full age. Any number of offices may be held by the same person.

(ii) Bonding. The Company may secure the fidelity of any or all of its officers by bond or otherwise.

(iii) Standard of Care. Officers of the Company shall be subject to the same standards of conduct, including standards of care and loyalty and rights of justifiable reliance, as shall at the

time be applicable to the Member of the Company under Section 9(g)(i) of this Operating Agreement and the Act.

      (b)    Election, Term of Office and Resignations.

          (i)    Election and Term of Office. The officers of the Company, except those elected by delegated authority pursuant to Section 10(c), shall be elected by the Member, and each such officer shall hold office until a successor has been selected and qualified or until his or her earlier death, resignation or removal.

          (ii)    Resignations. An officer of the Company may resign at any time by giving written notice to the Company. The resignation of an officer shall be effective upon receipt of such notice or at such later time as shall be specified in the notice. Unless otherwise specified in the notice, the acceptance of the resignation shall not be necessary to make such resignation effective.

      (c)    Subordinate Officers. The Member may from time to time also elect such other officers as the Company's Business may require, including one or more assistant secretaries, a treasurer and one or more assistant treasurers, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in this Operating Agreement, or as the Member may from time to time determine. The Member may delegate to any officer the power to elect subordinate officers and to retain or appoint employees or other agents, or committees thereof, and to prescribe the authority and duties of such subordinate officers, committees, employees or other agents.

      (d)    Removal of Officers and Agents. Any officer or agent of the Company may be removed by the Member with or without cause. The removal shall be without prejudice to the contract rights, if any, of any person so removed. Election or appointment of any officer or agent shall not of itself create contract rights.

      (e)    Vacancies. A vacancy in any office because of death, resignation, removal, disqualification, or any other cause may be filled by the Member.

      (f)    Authority. All officers of the Company, as among themselves and the Company, shall have such authority and perform such duties in the management of the Company as may be provided by or pursuant to resolutions or orders of the Member or, in the absence of controlling provisions in the resolutions or orders of the Member, as may be determined by or pursuant to this Operating Agreement. Without limiting the foregoing, officers of the Company shall each have such powers as generally pertain to their respective offices. The officers of the Company shall have the power and authority to enter into contracts and other agreements in the ordinary course of the Company's business.

      (g)    The Chairman. The chairman, if there is one, shall preside at all meetings of the Company, and shall perform such other duties as may from time to time be requested by the Member.

      (h)    The President. The president shall be the chief executive officer, if there is no chairman, and shall have general supervision over the Company's Business, subject, however, to the control of the Member and the chairman, if there is one. The president shall sign, execute, and acknowledge, in the name of the Company, deeds, mortgages, bonds, contracts and other instruments authorized by the Member or by this Operating Agreement, except in cases where the signing and execution thereof shall be expressly delegated by the Member or by this Operating Agreement to some other officer or agent of the Company; and, in general, shall perform all duties incident to the office of the president and such other duties as from time to time may be

assigned by the Member. In the case of a vacancy in the office of chairman or the absence of the chairman, the president shall preside at all meetings of the Company.

(i)     The Vice Presidents. The vice presidents shall perform the duties of the president in the absence of the president and such other duties as may from time to time be assigned to them by the Member or the president.

(j)     The Secretary. The secretary or any assistant secretary shall attend all meetings of the Company and all committees thereof; shall record all votes of the Member and the minutes of the meetings of the Company and of committees of the Company in a book or books to be kept for that purpose; shall see that notices are given and records and reports properly kept and filed by the Company as required by law; and, in general, shall perform all duties incident to the office of secretary and such other duties as may from time to time be assigned by the Member or the president.

(k)     The Treasurer. The treasurer shall have or provide for the custody of funds or other property of the Company; shall collect and receive or provide for the collection and receipt of moneys earned by or in any manner due to or received by the Company; shall deposit all funds in its custody as treasurer in such banks or other places of deposit as the Member may from time to time designate; shall, whenever so required by the Member, render an account showing all transactions as treasurer and the financial condition of the Company; and, in general, shall discharge such other duties as may from time to time be assigned by the Member or the president.

(l)     Salaries. The salaries of the officers elected by the Member shall be fixed from time to time by the Member or by such officer as may be designated by resolution of the Company. The salaries or other compensation of any other officers, employees and other agents shall be fixed from time to time by the officer to which the power to elect such officers or to retain or appoint such employees or other agents has been delegated pursuant to Section 10(c). No officer shall be prevented from receiving such salary or other compensation by reason of the fact that the officer is also a Member of the Company or an officer or employee of a Member of the Company.

11.     Capital Contributions. The Member has contributed to the Company the sum of $10.00 as its initial capital contribution.

12.     Additional Contributions. The Member is not required to make any additional capital contributions to the Company.

13.     Membership Interests Un-certificated. Limited liability membership interests in the Company shall be un-certificated.

14.     Allocation of Profits and Losses. The Company's profits and losses shall be allocated to the Member. The Member intends that the Company be disregarded as an entity separate from its owner for federal and state tax purposes.

15.     Distributions. Distributions shall be made to the Member at the times and in the aggregate amounts as determined by the Member. Such distributions shall be allocated to the Member. Notwithstanding any provision to the contrary contained in this Operating Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law.

16.     Transfer of Membership Interest. The Member may transfer, sell, convey and assign, in whole or in part, its limited liability company interest in the Company as it may determine in its sole discretion. Any permitted transferee shall be admitted to the Company as a member of the Company effective upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Operating Agreement, which instrument may be a counterpart signature page to this Operating Agreement. Any such transferee may receive an interest in the Company without making a contribution or being obligated to make a contribution to the Company. If a member transfers all of its limited liability company interest in the Company pursuant to this Section 16, such member shall cease to be a member of the Company effective immediately following consummation of such transfer and the transferee's execution of an instrument signifying its agreement to be bound by the terms and conditions of this Operating Agreement. Notwithstanding anything in this Operating Agreement to the contrary, any successor to the Member by merger or consolidation shall, without further act, be the Member hereunder, and such appointment shall not constitute an assignment for purposes of this Operating Agreement and the Company shall continue without dissolution.

17.     Resignation of the Member. Any member of the Company may resign from the Company at any time by giving thirty days' written notice to the Company. If the Member resigns pursuant to this Section 17, an additional member of the Company designated by the Member shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Operating Agreement, which instrument may be a counterpart signature page to this Operating Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company. If any member resigns pursuant to this Section 17, it shall not have the right to receive any payment or other distribution at the time of such resignation (including, without limitation, the fair value of its limited liability company interest), other than any distribution to which such member is otherwise entitled, as of the date of resignation, to receive under Section 15.

18.     Admission of Additional Member(s). One or more persons may be admitted as additional members of the Company from time to time with the consent of the Member. Each such person shall be admitted as an additional member of the Company at the time such person (i) executes this Operating Agreement or a counterpart of this Operating Agreement (or an amendment and restatement of this Operating Agreement which is also executed by all other members) and (ii) is named as a member of the Company on **Schedule B** hereto or thereto. If the Company is or becomes taxable as a partnership, the Member agrees to cooperate in good faith to amend and restate this Operating Agreement in consideration of the applicable partnership tax rules.

19.     Indemnification.

        (a)     Definitions. For the purposes of this Section 19, the following terms shall have the following meanings:

        (i)     "Indemnified Capacity" means any and all past and present service by an Indemnified Representative in one or more capacities as a member, manager, officer, employee or agent of the Company, or, at the request of the Company, as a member, manager, director, officer, employee, agent, fiduciary or trustee of another limited liability company, corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise.

        (ii)    "Indemnified Representative" means any and all members, managers, officers, employees and agents of the Company and any person serving at the request of the Company, as a member,

manager, director, officer, employee, agent, fiduciary or trustee of another limited liability company, corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise.

      (iii)    "Liability" means any damage, judgment, amount paid in settlement, fine, penalty, punitive damages, excise tax assessed with respect to an employee benefit plan, or cost or expense of any nature (including, without limitation, reasonable attorneys' fees and disbursements).

      (iv)    "Proceeding" means any threatened, pending or completed action, suit, appeal or other proceeding of any nature, whether civil, criminal, administrative or investigative, whether formal or informal, and whether brought by or in the right of the Company, a class of its members, or security holders or otherwise.

    (b)    Indemnification by the Company.

      (i)    Expenses. Unless limited by the Articles, an Indemnified Representative who has been successful, on the merits or otherwise, in the defense of any Proceeding, or in the defense of any claim, issue or matter in the Proceeding, shall be indemnified against reasonable expenses actually incurred by the Indemnified Representative in connection with the Proceeding, claim, issue or matter in which the Indemnified Representative was successful.

      (ii)    In General. The Company shall indemnify an Indemnified Representative against any Liability actually and reasonably incurred in connection with any Proceeding in which the Indemnified Representative may be involved as a party or otherwise by reason of the fact that such person is or was serving in an Indemnified Capacity, including, without limitation, any Liability resulting from any actual or alleged breach or neglect of duty, error, misstatement or misleading statement, negligence, gross negligence or act giving rise to strict or products liability, except:

           (A)    where such indemnification is expressly prohibited by applicable law;

           (B)    where it has been finally determined:

                (1)    that the act or omission of the Indemnified Representative was material to the matter giving rise to the Proceeding; and

                    (i)    was committed in bad faith; or

                    (ii)    was the result of active and deliberate dishonesty; or

                (2)    that the Indemnified Representative actually received an improper personal benefit in money, property or services; or

                (3)    in the case of any criminal Proceeding, that the Indemnified Representative had reasonable cause to believe that the act or omission was unlawful; or

        (C)    to the extent such indemnification has been finally determined in a final adjudication to be otherwise unlawful.

        (iii)    <u>Partial Indemnification</u>.  If an Indemnified Representative is entitled to indemnification in respect of a portion, but not all, of any Liability to which such Indemnified Representative may be subject, the Company shall indemnify such Indemnified Representative to the maximum extent for such portion of that Liability.

        (iv)    <u>Settlement</u>.  Except as provided in clause (v) below, the termination of a Proceeding by judgment, order or settlement shall not create a presumption that the Indemnified Representative is not entitled to indemnification.

        (v)    <u>Termination of a Proceeding</u>.  The termination of a Proceeding by conviction, or a plea of nolo contendere or its equivalent, or an entry of an order of probation prior to judgment, creates a rebuttable presumption that the Indemnified Representative is not entitled to indemnification.

        (vi)    <u>Successful Defense: Indemnified</u>.  To the extent that an Indemnified Representative of the Company has been successful on the merits or otherwise in defense of any Proceeding or in defense of any claim, issue or matter therein, such Indemnified Representative shall be indemnified against expenses (including attorneys' fees and disbursements) actually and reasonably incurred by such Indemnified Representative in connection therewith.

        (c)    <u>Proceedings Initiated by Indemnified Representatives</u>.  Notwithstanding any other provision of this Section 19, the Company shall not indemnify under this Section 19 an Indemnified Representative for any Liability incurred in a Proceeding initiated (which shall not be deemed to include counterclaims or affirmative defenses) or participated in as an intervenor or *amicus curiae* by such Indemnified Representative seeking indemnification except for a proceeding brought to enforce indemnification under this Section 19 or unless such initiation of or participation in the Proceeding is authorized, either before or after its commencement, by the Member.  This paragraph does not apply to reimbursement of expenses incurred in successfully prosecuting or defending the rights of an Indemnified Representative granted by or pursuant to this Section 19.

        (d)    <u>Advancing Expenses</u>.  The Company may pay the expenses (including reasonable attorneys' fees and disbursements) incurred in good faith by an Indemnified Representative in advance of the final disposition of a Proceeding described in Section 19(b) or the initiation of or participation in such Proceeding which is authorized pursuant to Section 19(c) upon receipt by the Company of (i) a written affirmation by the Indemnified Representative of the Indemnified Representative's good faith belief that the standard of conduct necessary for indemnification by the Company has been met; and (ii) of an undertaking by or on behalf of the Indemnified Representative to repay the amount if it is ultimately determined that such Indemnified Representative is not entitled to be indemnified by the Company pursuant to this Section 19.  The financial ability of an Indemnified Representative to repay an advance shall not be a prerequisite to the making of such advance.

        (e)    <u>Securing of Indemnification Obligations</u>.  To further effect, satisfy or secure the indemnification obligations provided in this Section 19 or otherwise, the Company may maintain insurance, obtain a letter of credit, act as self-insurer, create a reserve, trust, escrow, cash collateral or other fund or account, enter into indemnification agreements, pledge or grant a security interest in any assets or properties of the Company, or use any other mechanism or arrangement whatsoever in such amounts, at such costs, and upon such other terms and conditions as the Member shall deem appropriate.  Absent fraud, the determination

of the Member with respect to such amounts, costs, terms and conditions shall be conclusive against the present and future members of the Company and all security holders and officers of the Company and shall not be subject to voidability.

(f)    Payment of Indemnification. An Indemnified Representative shall be entitled to indemnification within 30 days after a written request for indemnification has been delivered to the secretary of the Company. The indemnification pursuant to this Section 19 shall be made only from the assets of the Company and no Member shall be personally liable therefor.

(g)    Contract Rights; Amendment or Repeal. All rights under this Section 19 shall be deemed a contract between the Company and each Indemnified Representative pursuant to which the Company and each Indemnified Representative intend to be legally bound. Any repeal, amendment or modification hereof shall be prospective only and shall not affect any rights or obligations then existing.

(h)    Scope of this Section. The rights granted by this Section 19 shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any statute, agreement or otherwise, both as to action in an Indemnified Capacity and as to action in any other capacity. The indemnification and advancement of expenses provided by or granted pursuant to this Section 19 shall continue as to a person who has ceased to be an Indemnified Representative in respect of matters arising prior to such time, and shall inure to the benefit of the heirs, executors, administrators and personal representatives of each such person.

(i)    Reliance on Provisions. Each person who shall act as an Indemnified Representative shall be deemed to be doing so in reliance upon the rights of indemnification and advancement of expenses provided by this Section 19.

20.    Dissolution.

(a)    In General. The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the termination of the legal existence of the last remaining member of the Company or the occurrence of any other event which terminates the continued membership of the last remaining member of the Company in the Company unless the Company's Business is continued in a manner permitted by this Operating Agreement or the Act, (ii) the determination of the Member to dissolve the Company or (iii) the entry of a decree of judicial dissolution under the Act.

(b)    Bankruptcy or Insolvency of Member. Notwithstanding any other provision of this Operating Agreement or the Act, the bankruptcy or insolvency of any member of the Company shall not cause such member to cease to be a member of the Company and upon the occurrence of such an event, the Company's Business shall continue without dissolution.

(c)    Company Waiver. Notwithstanding any other provision of this Operating Agreement or the Act, each member of the Company waives any right it might have to agree in writing to dissolve the Company upon the bankruptcy or insolvency of such member or any other member of the Company or the occurrence of any other event that causes such member or any other member of the Company to cease to be a member of the Company.

(d)    Winding Up of the Company. In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an

DE

orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in the Act.

(e) Termination of the Company's Existence. The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Operating Agreement and (ii) the Articles shall have been dissolved and canceled by the filing of a Certificate of Cancellation in the manner required by the Act.

21. Inurement. This Operating Agreement shall be binding on, and inure to the benefit of, all parties hereto, their successors and assigns to the extent, but only to the extent, that assignment is made in accordance with, and permitted by, the provisions of this Operating Agreement.

22. Severability of Provisions. Each provision of this Operating Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Operating Agreement which are valid, enforceable and legal.

23. Entire Agreement. This Operating Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

24. Amendments. This Operating Agreement may be amended from time to time by a written agreement executed by the Member.

25. Governing Law. This Operating Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to its conflicts of laws principles), all rights and remedies being governed by said laws.

26. Construction. Whenever the context requires, references in this Operating Agreement to the singular number shall include the plural, and words denoting gender shall include the masculine, feminine and neuter. The recitals above and the schedules attached hereto are true, correct and complete in all respects and are hereby made a part of this Operating Agreement and are deemed incorporated herein in full.

27. Headings. The headings in this Operating Agreement are for convenience only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Operating Agreement or any of its provisions.

28. Waiver. The failure of any party to seek redress for violation of, or to insist upon the strict performance of, any covenant or condition of this Operating Agreement shall not prevent a subsequent act that would have originally constituted a violation from having the effect of an original violation.

29. Cumulative Remedies. The rights and remedies provided under this Operating Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right of such party to use any or all other remedies. Such rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance or otherwise.

30. Notices. Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed by registered or certified mail, return receipt requested, postage prepaid, or delivered to a recognized overnight courier service with guaranteed next day delivery or sent by telecopy, electronic mail or

DE

other similar form of rapid transmission (with confirmation received), and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in Section 4, (b) in the case of any member of the Company, to such member at its address as listed on **Schedule B** and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

31.    Counterparts. This Operating Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. Any signature delivered by electronic or facsimile transmission shall be deemed to be an original signature page to this Operating Agreement.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Operating Agreement as of the date first written above.

**SOLE MEMBER**

Peak Medical, LLC

By: _____
     Name:  Michael S. Sherman
     Title:  Secretary

DE

## Schedule A

### Peak Medical Montana Operations, LLC

**Facility**

Butte Center
2400 Continental Drive
Butte, MT  59701

Whitefish Care and Rehabilitation Center
1305 E. Seventh Street
Whitefish, MT  59937

DE

## Schedule B

### Peak Medical Montana Operations, LLC

#### Sole Member

| Name | Mailing Address | Agreed Value of Capital Contribution | Percentage Interest |
|---|---|---|---|
| Peak Medical, LLC | 101 East State Street Kennett Square, PA 19348 | $10.00 | 100% |

DE

## Schedule C

### Peak Medical Montana Operations, LLC

#### Definitions

"Affiliate" shall mean as to any Person any other Person that directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with such first Person.

"Control" (including, with correlative meanings, the terms "controlled by" and "under common control with") means the ownership or control of securities possessing at least 50% of the voting power of all outstanding voting securities of a Person or the power to otherwise direct or cause the direction of the management, policies and/or decision making of such a Person, whether through the ownership of voting stock or similar rights or otherwise.

"Person" shall mean any individual, limited liability company, corporation, partnership, joint venture, trust, employee benefit plan or other entity, and the heirs, executors, administrators, legal representatives, successors and assigns of such Person as the context may require.

27336782_1

Business Entity Search - Montana Secretary of State

MONTANA SECRETARY OF STATE LINDA MCCULLOCH
# Business Entity Search

🅘 Instructions    🅠 Search Tips    🅕 Feedback

🔍 **Search Again**

Search

When a business entity name ends with an asterisk (*) the name was either too long for the database or is listed in this system twice. The asterisk is not usually part of the name. If you need an exact name, such as for legal process, please e-mail the Secretary of State for further information at sos@mt.gov.

| Name | City | Status |
|------|------|--------|
| BUTTE CENTER | KENNETT SQUARE | |

## Principal Information

| Position | Name | Address |
|----------|------|---------|
| CORPORATION | PEAK MEDICAL MONTANA OPERATIO* | 101 E STATE ST  KENNETT SQUARE  PA 19348 |



EXHIBIT

F

6/2/2016                                        Division of Corporations - Filing

Delaware.gov | Text Only                    Governor | General Assembly | Courts | Elected Officials | State Agencies

*State of*
**Delaware**
The Official Website of the First State.

**Department of State: Division of Corporations**

Allowable Characters

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

SERVICES
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

INFORMATION
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request
How to Form a New Business Entity
Certifications, Apostilles & Authentication of Documents

Frequently Asked Questions   View Search Results

## Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| File Number: | 4049146 | Incorporation Date / Formation Date: | 10/21/2005 (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | GENESIS HEALTHCARE, INC. | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | CORPORATION SERVICE COMPANY | | |
|---|---|---|---|
| Address: | 2711 CENTERVILLE RD SUITE 400 | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19808 |
| Phone: | 302-636-5401 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status, Tax & History Information [ Submit ]

[ Back to Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov


**EXHIBIT**
G

https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx                                                1/1

CERTIFIED COPY

**RECEIVED**

DEC 2 4 2015

**MMLP**

FILED
12/9/2015
SUSIE KITTLESON, CLERK

CLERK

MONTANA THIRD JUDICIAL DISTRICT COURT,
DEER LODGE COUNTY

IN THE MATTER OF THE ESTATE OF          *
                                        *
CHARLENE HILL,                          *     Probate No. DP-2015- 36
                                        *
              Deceased.                 *

---

### LETTERS

---

THE INTESTATE ESTATE OF CHARLENE HILL

Having been admitted to probate, and:     GINA JAEGER
                                          812 W. Spring
                                          Lewistown, MT 59457

Appointed as Personal Representative of said intestate estate, by Order in the above

proceeding, date the 9th day of December, 2015.

LETTERS OF APPOINTMENT, as such Personal Representative, are hereby

issued as provided by law.

WITNESS, the Clerk of the above-named Court and the Seal of the Court affixed

this 9th day of December, 2015.

Letters
Page 1 of 3



_____
CLERK OF COURT

(COURT SEAL)

By:_____
        DEPUTY CLERK

STATE OF MONTANA      )
                      : ss
COUNTY OF FERGUS      )

I, GINA JAEGER, hereby accept the duties of Personal Representative of the Estate of CHARLENE HILL, deceased, and do solemnly swear that I will perform, according to law, the duties of Personal Representative of the Estate of CHARLENE HILL, deceased.

By signing, accepting, or acting under this appointment, I acknowledge that I will assume the duties and responsibilities of a fiduciary and that I must work exclusively for the benefit of the decedent's estate and its beneficiaries. I also acknowledge that the primary duty of a personal representative is the duty of loyalty to and protection of the best interests of the estate. Therefore, I acknowledge that:

I may not use any of the property or other assets of the decedent's estate for my own personal benefit;

I must direct any benefit derived from this appointment to the decedent's estate; and

I must avoid conflicts of interest and must use ordinary skill and prudence in

carrying out the duties of this appointment.

GINA JAEGER

SUBCRIBED AND SWORN TO before me this ___ day of December, 2015.

Torger S. Oaks
Notary Public for the State of Montana
Residing at Lewistown
My Commission expires 02/25/2019

Letters
Page 3 of 3