
FILED

MAR 10 2017

Clerk, U.S. District Court
District Of Montana
Helena

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

GINA JAEGER, individually, AND
AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF HER SISTER
CHARLENE HILL,

      Plaintiff,

vs.

PEAK MEDICAL MONTANA
OPERATIONS, LLC,

      Defendant.

No. CV 16-30-BU-SEH

ORDER

## Background

Plaintiff Gina Jaeger, sister of Charlene Hill ("Hill"), and Personal Representative of the Estate of Charlene Hill, filed this action in state court alleging claims relating to Hill's inpatient care provided from August 13, 2015, to August 25, 2015, at a nursing facility known as the Butte Center in Butte,

Montana.¹ The case was removed to this Court on June 10, 2016.² An amended complaint was filed on August 2, 2016.³

The Court, following removal, denied Plaintiff's motion to remand and dismissed for fraudulent joinder and without prejudice three individual defendants named in the amended complaint.⁴ The Court also granted Genesis Healthcare, Inc.'s motion to dismiss, leaving Peak Medical Montana Operations, LLC ("Peak") as the sole remaining defendant.⁵ The claim against Peak asserts vicarious liability based on the purported negligence of the same three previously dismissed individual Montana citizen employees of Peak alleged in the amended complaint to have caused Hill's personal injury and subsequent death.⁶

## Motion to Compel Arbitration

On February 14, 2017, Peak moved "for an order compelling the parties to submit to arbitration and staying this action until arbitration has been completed."⁷

---

¹ Doc. 1-1.

² Doc. 1.

³ Doc. 28.

⁴ Doc. 78.

⁵ Doc. 84.

⁶ Doc. 28 at 4-6.

⁷ Doc. 91 at 2.

The motion is grounded in a Voluntary Binding Arbitration Agreement (the "Agreement") entered into between Hill and Peak on August 14, 2015.[8] Plaintiff opposes enforcement of the Agreement with the argument that "[w]hen Charlene Hill, a person of limited education, with a severe anxiety disorder signed this agreement under the influence of narcotics, the Arbitration agreement as to her situation is clearly unconscionable."[9]

## **Federal Arbitration Act**

The Federal Arbitration Act[10] ("FAA") was enacted "to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[11] It "provide[s] for the enforcement of arbitration agreements within the full reach of the Commerce Clause."[12]

Section 2 of the FAA, "the primary substantive provision of the Act,"[13] is recognized "as reflecting both a 'liberal federal policy favoring arbitration,' and

---

[8] Doc. 94 at 3.

[9] Doc. 95 at 4.

[10] 9 U.S.C. §§ 1-16 (2012).

[11] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

[12] *Perry v. Thomas*, 482 U.S. 483, 490 (1987).

[13] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

the 'fundamental principle that arbitration is a matter of contract[.]'"[14]

## **Saving Clause**

"As federal substantive law, the FAA preempts contrary state law."[15] However, the final phrase of § 2 of the FAA, termed the saving clause, "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"[16] The saving clause however is not to be construed with "an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives."[17]

Determination of whether a contract is unconscionable under Montana law "is a two-step inquiry: (1) whether the provision fits the doctrine of a contract of adhesion such that the weaker bargaining party had no meaningful choice regarding its acceptance; and (2) whether the contractual terms are unreasonably favorable to the drafter, usually the party with superior bargaining power."[18]

---

[14] *Concepcion*, 563 U.S. at 339 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

[15] *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013) (citations omitted).

[16] *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

[17] *Id.* at 343 (citations omitted).

[18] *Highway Specialties, Inc. v. State, Dep't of Transp.*, 215 P.3d 667, 670 (Mont. 2009) (citing *Arrowhead School Dist. No. 75 v. Klyap*, 79 P.3d 250, 263 (Mont. 2003)).

"Whether or not the clause is unreasonably favorable to the drafter in turn involves an inquiry into whether the clause is within the reasonable expectations of the weaker party or is unduly oppressive to the weaker party."[19] Factors to be considered in determining whether a provision is outside a party's reasonable expectations include:

> [1] [W]hether the waiver clause was conspicuous and explained the consequences of the provision (e.g. waiver of the right to trial by jury and right of access to the courts); [2] whether a disparity existed in the bargaining power of the contracting parties; [3] whether a difference in business experience and sophistication of the parties existed; [4] whether the party charged with the waiver was represented by counsel at the time the agreement was executed; [5] whether economic, social or practical duress compelled a party to execute the contract; [6] whether the parties actually signed the agreement or separately initialed the waiver provision; and [7] whether the waiver clause was ambiguous or misleading.[20]

## **The Agreement**

Plaintiff fails to demonstrate the Agreement is unconscionable under Montana law. The FAA's clear mandate that private arbitration agreements are to be enforced according to their terms governs.

---

[19] *Klyap*, 79 P.3d at 263 (citing *Iwen v. U.S. West Direct*, 977 P.2d 989, 994-95 (Mont. 1999)).

[20] *Kelker v. Geneva-Roth Ventures, Inc.*, 303 P.3d 777, 781 (Mont. 2013) (citing *Kortum-Managhan v. Herbergers NBGL*, 204 P.3d 693, 699 (Mont. 2009)).

The Agreement is not a contract of adhesion. It unambiguously states: **"THIS AGREEMENT IS VOLUNTARY AND IS NOT A PRECONDITION TO RECEIVING SERVICES AT THE CENTER."**[21]

The *Kelker* factors support the conclusion that arbitration was within Hill's reasonable expectations at the time of contracting. The Agreement is a standalone document. It states in multiple places that it is voluntary.[22] Cancellation in writing by Hill within thirty days of signing was permitted.[23] The waiver of trial by judge or jury is stated in the Agreement three separate times, twice in capitalized type.[24] Finally, the signature page restates certain key provisions in capitalized type. It was signed by Charlene Hill and Jamie LeProwse on behalf of Peak.[25] A plainly-worded cover page providing an overview of arbitration is attached to the Agreement.[26]

The Agreement's applicability to the issues and parties in this matter is not in dispute. No viable contract defense to arbitration has been established.

---

[21] Doc. 92-1 at 5; *see also* Doc. 92-1 at 1, 2.

[22] Doc. 92-1 at 2, 5.

[23] Doc. 92-1 at 2.

[24] Doc. 92-1 at 2, 5.

[25] Doc. 92-1 at 5.

[26] Doc. 92-1 at 1.

Arbitration is directed under 9 U.S.C. § 4 to proceed.

ORDERED:

1. Peak's Motion to Compel Arbitration[27] is GRANTED.

2. All proceedings in this case are stayed under 9 U.S.C. § 3 pending arbitration.

3. The preliminary pretrial conference set for March 15, 2017, is VACATED to be reset, if appropriate, by further order of court.

4. Beginning within three months of the date of this Order, and every three months thereafter, the parties shall file a joint status report in this case to update the Court as to the progress of arbitration.

DATED this 10th day of March, 2017.

/s/ Sam E. Haddon
SAM E. HADDON
United States District Judge

---

[27] Doc. 91.